UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:13-cv-175-RJC

| BOBBY J. KINSER, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | ORDER |
|  | ) |  |
| UNITED METHODIST AGENCY FOR | ) |  |
| THE RETARDED – WESTERN NORTH | ) |  |
| CAROLINA, INC., d/b/a UMAR, | ) |  |
|  | ) |  |
| Defendant. | ) |  |
|  | ) |  |
|  | ) |  |

**THIS MATTER** comes before the Court on Defendant United Methodist Agency for the Retarded – Western North Carolina, Inc., d/b/a UMAR's (UMAR) Motion for Summary Judgment, (Doc. 23), Plaintiff Bobby J. Kinser's (Kinser) Response in Opposition, (Doc. 30), Defendant's Reply to Response to Motion, (Doc. 33), Defendant's Motion to Strike, (Doc. 34), and Plaintiff's Response (Doc. 40). For the reasons below, the Court grants the Defendant's Motion for Summary Judgment.

**I.    BACKGROUND**

A.    <u>Procedural Background</u>

Plaintiff Bobby J. Kinser brought this action for sex and age discrimination against his former employer, UMAR, under Title VII of the Civil Rights Act of 1964, (Title VII), 42 U.S.C. §§ 2000e et seq., the Age Discrimination and Employment Act, (ADEA), 29 U.S.C. § 621, and wrongful discharge based on North Carolina law. (Doc. 1).

1

On April 11, 2012, Plaintiff filed a Charge of Discrimination against UMAR with the U.S. Equal Employment Opportunity Commission (EEOC), (Doc. 23), alleging that he was discriminated against on the bases of his age and sex. (Doc. 23-1). On December 20, 2012, the EEOC issued a Dismissal and Notice of Rights regarding Plaintiff's Charge. (Doc. 1-1). On March 19, 2013, Plaintiff filed suit in this Court. (Doc. 1).

B.  Factual Background

UMAR is a non-profit organization that serves individuals with emotional, intellectual, and physical disabilities. (Doc. 23). Plaintiff Kinser began working for UMAR in 1991, eventually reaching the position of Chief Operating Officer (COO). (Doc. 1). He was approximately forty-five years old (45) when he was terminated on March 7, 2012. (Id.) From July 2011 until October 2011, Kinser served as UMAR's interim President until the position was filled by Ann Church (Church) in October 2011. (Id.). Upon being promoted to the position of interim President, Kinser was given a $7000 raise. (Doc. 30-5). After Church was hired as President, Kinser returned to his role as COO. (Doc. 23). At that time, the three people in charge of managing UMAR were Kinser, Teran Morrow (Morrow), and Marilyn Garner (Garner). (Id., Doc. 30-6).

### Performance as COO

During her deposition, Church addressed several incidents involving Kinser which led to his eventual firing. (Docs. 30-6; 33-1). She stated that within her first week at UMAR, Kinser suggested that she sign a Medicaid attestation letter without disclosing that UMAR was undergoing a Department of Labor Investigation, thereby putting UMAR in danger of losing its license. (Id.).

Church also mentioned one occasion in which Kinser disobeyed her directions regarding a

female UMAR employee whom Church planned to terminate, when he suggested to the employee that she resign before Church could terminate her. (Id.).  Finally, Church related an incident in which Kinser failed to provide help to one of UMAR's vans that broke down in inclement weather while transporting residents. (Id.). Kinser was supposed to call a fleet management company to request a cab or limousine pick up the staff and residents, but no cab or limousine ever arrived. As a result, the residents and staff were stranded on the side of the road for several hours before being transported illegally on the back of a flatbed truck. (Id.).  Church sent him several emails addressing various deficiencies in his performance and suggesting improvements.  (Docs. 24: Exhibits D-F, 30-5; 30-6).

Kinser contests Church's account of events.  Instead, he maintains that he acted in good faith, consulting with Medicaid to get a recommendation of the proper course of action, (Doc. 30-5); that his role in the conversation with the employee was limited to informing her of the meeting, (Id.); and, that he called the fleet management company to arrange for transportation and was never informed that it did not arrive. (Id.). As evidence, Kinser includes performance reviews covering several years in which his performance was evaluated as meeting or exceeding expectations. (Doc. 30-8).   Finally, he claims that he never received any warning or notice that his performance was not conforming to Church's expectations.

### Termination

On March 7, 2012 Kinser was terminated after 21 years of employment. (Doc. 30-12). During the meeting, Church informed Kinser that she was building her team and did not see him as part of it.  She did not state that the dissolution of the COO position was one of the reasons for his termination. (Id.).

### Post-Termination

After Kinser's termination, the position of COO was eliminated and he was not immediately replaced. (Docs. 30-6, 33-4). Church sent an email to the families of UMAR patients stating that she would assume most of the duties of his position as they sought a replacement. (Doc. 30-11). Kinser maintains that, although the COO position was never officially filled, Christine Gibney took responsibility over his job duties after he was terminated. (Docs. 30-5; 30-6). When Christopher Powell (Powell), a former UMAR employee, was deposed, he stated that a female by the name of Chelsea took over some of Kinser's job duties. (Doc. 30-4).

Kinser testified that no management official, including Church, ever made negative remarks about his age or sex either before or after his termination. (Doc. 23-1). Instead, management referred generally to "old UMAR," a derogatory description of the way operations were conducted under his leadership. He said this personally offended him because he had been an employee of UMAR for such a long time even though the remarks were not directed at him specifically. (Id.).

## II. STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes

demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted). "The burden on the moving party may be discharged by 'showing' . . . an absence of evidence to support the moving party's case." Id. at 325.

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. The nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; accord Sylvia Dev. Corp. v. Calvert County, Md., 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Ricci v. DeStefano, 557 U.S. 557, 586 (2009) (internal citations omitted).

## III. DISCUSSION

### A. The Ministerial Exception

Title VII excludes religious organizations from certain provisions of the statute. 42 U.S.C.§ 2000e-1. The Supreme Court has recognized the First Amendment as a bar to certain discrimination claims (such as termination) brought by ministers against their churches. See Hosanna-Tabor Evangelical Lutheran Church and School v. EEOC, __U.S.__, 132 S.Ct. 694 (2012).

The evidence UMAR provides is limited to a statement by Kinser during his deposition

5

that other parties might consider him a minister. This evidence alone is not sufficient to establish that Plaintiff's position was ministerial in nature and that his claim was precluded on constitutional or statutory grounds.

B. Defendant's Motion to Strike

UMAR moved to strike the affidavits of Cindy Powell, Chris Powell, and Bob Kinser (Docs. 30-1; 30-2; 30-3). Rule 26 requires a party to disclose the name of each individual that a party may use to support its claims; absent such identification, a witness's statement cannot be used to supply evidence on a motion unless the failure was substantially justified or is harmless. FED. R. CIV. P. 26(a)(1)(A), 36(c)(1). Here, Kinser failed to identify Cindy Powell in either his initial disclosures or in response to discovery requests. Instead, he first identified her in the submission of her affidavit attached to his Response to Defendant's Motion for Summary Judgment. Kinser has not shown that the failure was substantially justified, nor would its admission be harmless as her affidavit contains material evidence to support Kinser's claim. Rule 26 prevents the Court from considering the affidavit of Cindy Powell.

The Court likewise does not consider the affidavit of Chris Powell and Bob Kinser as they were submitted in response to the Summary Judgment motion and directly contradict their respective deposition testimony. A party cannot "create a genuine issue of fact sufficient to survive summary judgment simply by contradicting his or her own previous sworn statement (by, say, filing a later affidavit that flatly contradicts that party's earlier sworn deposition) without explaining the contradiction or attempting to resolve the disparity." Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 806 (1999). Here, Plaintiff has not attempted to resolve the disparity between the affidavit and contrary deposition testimony and the Court does not consider it.

C. ADEA

The ADEA provides, in relevant part, that "[i]t shall be unlawful for an employer . . . to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, or privileges of employment, because of such individual's age." 29 U.S.C.A. § 623(a)(1). Plaintiff provided no direct evidence of age discrimination so he must proceed under the "pretext" framework established in McDonnell Douglas Corp v. Green, 411 U.S. 792, 807 (1973). Under this framework, the plaintiff must prove a prima facie case of discrimination. See Hill v. Lockheed Martin Logistics Mgmt, Inc., 354 F.3d 277, 285 (4th Cir. 2004). If the plaintiff is successful, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for taking adverse action. Id. If the defendant meets this burden, the plaintiff must then demonstrate that defendant's stated reason is merely a pre-text for discrimination. Id.

In order to make a prima facie showing of discrimination, Kinser, as Plaintiff, must demonstrate that: (1) he is a member of a protected class; (2) he suffered adverse employment action; (3) he was performing his job duties at a level that met his employer's legitimate expectations at the time of the adverse employment action; and (4) the position remained open or he was replaced by a substantially younger individual. O'Connor v. Consol. Coin Caterers Corp., 517 U.S. 308, 310-11 (1996).

UMAR does not dispute that Kinser, aged 45, is a member of a protected class or that he suffered an adverse employment action. Instead, it contends that he was not performing his job duties at a level that met their legitimate expectations when he was fired, and that he was never replaced because the position of COO was eliminated. Accordingly, the Court focuses on the third and fourth prong of Kinser's prima facie case.

The evidentiary record reflects a genuine question of fact as to whether Kinser was

7

meeting his employer's legitimate expectations. The most important fact supporting Kinser is that he worked for twenty-one years for UMAR; the only inference from a period of such duration is that the employee is meeting the employer's legitimate expectations. Further support is found in a series of performance evaluations which were uniformly positive. (Doc. 30-8). While the evaluations submitted by Plaintiff pre-date the period in which his performance was called into question by Church, they suggest that Kinser was meeting the legitimate expectations of the employer. In contrast, Church cites various instances which raise legitimate questions about Kinser's performance; indeed Church sent him a series of emails in addressing some of these concerns. Viewed as a whole, the evidentiary record suggests a legitimate question of fact concerns about whether Kinser was meeting his employer's legitimate expectations.

Notwithstanding this question of fact, Kinser fails to establish a prima facie case as there is no evidence that he was replaced by a substantially younger person. He states in his deposition that Christne Gibney took over his position; however, there is no evidence addressing whether she was "substantially younger" than Kinser. Further, UMAR submitted various forms of evidence that the position of COO was eliminated after his termination and that nobody replaced him. (Docs. 30-11; 33-1 at 20). The Fourth Circuit has held that the fourth element of the McDonnell Douglas standard is not satisfied where a plaintiff's duties are merely absorbed by the employer. See Hardin v. Belmont Textile Machinery Co., 355 Fed. Appx. 717, 721. According, Kisner fails to make a showing that his COO position was left open, or that he was replaced by a substantially younger person. Accordingly, Plaintiff is unable to establish a prima facie case for discrimination under the McDonnell-Douglas framework.

Even assuming, arguendo, that Kinser had established a prima facie case, it is clear that that Defendant's grounds for firing Kinser were not a pretext for discrimination. As discussed

8

supra, the evidentiary record establishes that Ms. Church had concrete reservations about Kinser's on the job performance, and that such reservations were not merely a pretext to fire him for discriminatory reasons. Church objected to Kinser's handling of the termination a colleague, (Doc. 33-1 at 34-35); believed he was negligent in assisting the organization through the accrediting process, (Id. at 48); lacked oversight in critical aspects such as bookkeeping, (Id. at 64); and believed that Kinser "lacked good judgment" and "leadership skills." (Id. at 50). Collectively, these concerns are sufficient to establish that Defendant's reasons for terminating Plaintiff's employment were not a pretext for a discriminatory intent.

D. Title VII

Under Title VII, it is unlawful for an employer to terminate an employee on the basis of the employee's gender. 42 U.S.C. § 2000e-2(a). In order to establish a case for gender discrimination through indirect evidence, the Plaintiff must establish a prima facie case of discrimination. McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Under the test set out in McDonnell-Douglas, the Plaintiff must show (1) that he is a member of a protected class; (2) that he was meeting his employer's legitimate expectations; (3) that he suffered an adverse employment action, and (4) that similarly situated individuals were treated more favorably than he was. Id. In addition, because the Plaintiff is a male plaintiff alleging gender discrimination, i.e. a member of a majority, he must set out "background circumstances" that show that the employer discriminates against the majority or that there is something "fishy" going on. Farr v. St. Francis Hosp. and Health Centers, 570 F.3d 829, 832 (7th Cir. 2007). Once a prima facie case has been established, the employer must provide a nondiscriminatory reason for the employment action; then, if it does, the plaintiff must show that their reason was pretext for discrimination. McDonnell Douglas Corp., 411 U.S. 792.

It is undisputed by UMAR that Kinser was a member of the protected class and that he suffered an adverse employment action when he was fired; however, UMAR contends that Kinser was not meeting their legitimate employment expectations and that he was not treated less favorably that a similarly situated female. Therefore, this Court focuses its attention on the second and fourth prongs of the McDonnell- Douglas standard.

Similar to the reasons previously addressed in regards to Kinser's ADEA claim, Kinser has not established that similarly situated employees were treated more favorably than him. Plaintiff's evidence is limited to an email from Teran Morrow to Church in which she uses curse words and makes inappropriate comments about Kinser's inability to do his job. (Doc. 30-10). Additionally, as discussed earlier, even if Kinser had established a prima facie case, the evidentiary record bears witness to legitimate concerns on the part of the employer and that such concerns were not merely a pretext for a discriminatory intent.

For these reasons his Court finds that Plaintiff has failed to offer facts to demonstrate a genuine issue for trial and to demonstrate a prima facie case of gender discrimination.

E.    North Carolina Law

N.C. Stat. Gen § 143-422.2 prohibits "discrimination or abridgment on account of race, religion, color, national origin, age, sex or handicap by employers which regularly employ 15 or more employees." For the reasons discussed above, this Court finds no genuine issue of material fact and is not convinced that a reasonable jury could return a verdict for Kinser based on the facts submitted to this Court.

For the reasons articulated above, the Court **grants** Defendant's Motion for Summary Judgment (Doc. 23).

IV.    CONCLUSION

**IT IS THEREFORE ORDERED that:**

1. Defendant's Motion for Summary Judgment (Doc. 23) is **granted.**

2. Defendant's Motion to Strike (Doc. 34) is **granted**.

3. The Clerk of Court is directed to close this case.

Signed: August 15, 2014

Robert J. Conrad, Jr.
United States District Judge